Matthew Z. Crotty
Casey Bruner
Riverside Law Group, PLLC
905 W. Riverside Ave.
Ste. 404
Spokane, Washington 99201

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

SCOTT STRAWN, an individual,

        Plaintiffs,

v.

HOMESTREET, INC, d/b/a HOMESTREET BANK, a Washington Corporation, and BANK OF IDAHO, an Idaho Corporation.

        Defendants.

NO. 2:23-CV-00185-TOR

**AMENDED COMPLAINT**[1]

Plaintiff Scott Strawn brings this action and alleges as follows:

### I. INTRODUCTION

1. Plaintiff brings this action alleging wrongful withholding of wages earned against his former employer, Defendant HOMESTREET, INC.

---

[1] Pursuant to Fed. R. Civ. P 41(a)(1)(A), Plaintiff files this amended complaint as "Amending as a Matter of Course." *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015)(" a plaintiff has the right to amend within twenty-one days of service of the complaint (15(a)(1)(A)), or within twenty-one days of service of a responsive pleading . . ."; *see also, Swanigan v. City of Chicago,* 775 F.3d 953, 963 (7th Cir. 2015) ("Because no responsive pleading or motion to dismiss had been filed, the 21–day clock under Rule 15(a)(1)(B) never started and Swanigan retained the right to amend his complaint.").

AMENDED COMPLAINT0F – 1

("HomeStreet"), and age discrimination against Defendant BANK OF IDAHO ("BOI").

## II. PARTIES, JURISDICTION AND VENUE

2. Defendants are within the jurisdiction of this Court.

3. HomeStreet, Inc. is a for profit bank authorized to do business in Washington State and operated its downtown Spokane branch in Spokane County, Washington (located at 818 W. Riverside Ave. Ste. 120 Spokane, WA 99201) and BOI purchased HomeStreet's downtown Spokane branch and continues to operate that branch in Spokane County, Washington.

4. BOI is a foreign bank corporation with its principal office in Idaho. The BOI does business in Spokane, Washington and operates a branch on 818 W. Riverside Ave. Ste. 120 Spokane, WA 99201.

5. Venue is proper in Spokane County because Defendants operate and transact business in Spokane County, and Mr. Strawn performed work for HomeStreet in Spokane County and was denied a position at BOI's Spokane County branch.

## III. FACTS

6. Mr. Strawn began working for HomeStreet on December 7, 2020. He was hired to serve as the VP branch manager for HomeStreet's downtown Spokane branch.

7. As part of hiring and recruiting Mr. Strawn, HomeStreet offered an "incentive plan" to determine performance-based compensation. The initial plans was the "HomeStreet Bank Retail Banking Branch Manager Incentive Plan – Effective as of January 1, 2021." The basic premise of the incentive plan was that HomeStreet wanted Mr. Strawn to increase the number and amount of new deposits that Mr. Strawn would generate as the branch manager. Mr. Strawn would be

compensated, in part, based on the number and amount of new deposits he generated for the bank.

8. The commission system was in place before Mr. Strawn was hired and was offered and explained to him as part of his interview and employment offer process. During the onboarding process, the commission schedule was sent to Mr. Strawn for his signature with his other onboarding paperwork when he began working on December 7, 2020. In May 2021, Human Resources sent Mr. Strawn an email that stated: "As previously announced by Retail Banking Leadership, the attached Retail Banking Branch Manager plan was approved and implemented effective January 1, 2021. We would like to ensure that we have a signed copy of the plan of file for you and will be routing the Plan to you via echosign (a functionality of Adobe e-signature) for review and signature." The "HomeStreet Bank Retail Banking Branch Manager Incentive Compensation Plan" was sent to Mr. Strawn for his signature and it was the same structure he already agreed to in 2020—he agreed to it another time. The commissions for new deposits would be paid the second month after the deposits were made. The commission schedule was one of the primary incentives in Mr. Strawn accepting the position. In speaking with Derryl Willis, one of Mr. Strawn's supervisors, Mr. Strawn was told that he could "buy an airplane" with his commissions. The commission chart for New Business Checking Accounts was as follows:

| PAYOUT STRUCTURE | |
|---|---|
| average ledger balance mtd* | incentive |
| $5,000 | $300 |
| $10,000 | $500 |
| $25,000 | $600 |
| $50,000 | $750 |
| $100,000 | $1,000 |
| $200,000 | $2,000 |
| $500,000 | $5,000 |
| $1,000,000 | $10,000 |
| $2,000,000 | $15,000 |
| $4,000,000 | $20,000 |

9. During his time as branch manager for the downtown branch, Mr. Strawn performed extremely well. He worked tirelessly to increase the branch's deposits. He took the branch from the second lowest branch in terms of deposits to the second highest. While the deposits that Mr. Strawn generated were coming in, Mr. Strawn's supervisors repeatedly told him that they were "proud" of him, that he was "on fire," that he was doing a "great job," that his growth was "incredible," that he was an "awesome leader" and that they were "thankful that [he is] here." On one team wide conference call, Mr. Strawn's supervisor (the EVP Retail Banking Director) referred to Mr. Strawn as a "hero" for his significant increase in deposits.

10. In 2021, Mr. Strawn increased the new deposits, both in number and volume, for new business checking accounts more than anyone anticipated. At least one account greatly exceeded the highest tier of commission level of

AMENDED COMPLAINT0F – 4

$4,000,000.00. Mr. Strawn earned at least $20,000 in commission on that account alone. However, HomeStreet did not pay Mr. Strawn the minimum $20,000 he was promised under the commission schedule for new checking accounts.

11. Mr. Strawn increased new "cost account relationship" accounts to the point that the subsequently revised 2022 Compensation Plan included a new "Scott Rule," which revised the Cost Account commissions to separate formula. However, the commission schedule for New Business Checking identified above remained the same.

12. Overall, Mr. Strawn increased the bank's deposits by nearly $100,000,000.00. But Mr. Strawn did not receive the full commission for his deposits. For at least one account that exceeded the $4,000,000.00 tier, he was only paid half of his commission. Based on information and belief, however, and based on the business practices, established customs, and representations made to Mr. Strawn, Mr. Strawn believes he may be entitled to an additional commission and higher commission amounts based on the percentages and size of accounts he acquired and grew for HomeStreet.

13. In May 2022, HomeStreet announced that it was selling five branches, including its downtown Spokane branch where Mr. Strawn was the manager, to BOI and that the sale would be effective August 1, 2022.

14.     On May 10, 2022, a video conference call involving Mr. Strawn and other effected Home Street employees happened with Mark Mason, HomeStreet's CEO. It was also attended by Jeff Newgard, who was the BOI's CEO. Mr. Strawn was told that this was not a merger, rather a sale of assets that included all employees that were being kept as employees of the acquiring bank as detailed by a letter dated July 19, 2022.

15.     Mr. Strawn left that meeting with the understanding that as of midnight July 29, 2022, the employees involved were being terminated by HomeStreet Bank, and employment with BOI would begin immediately after.

16.     From May 10, 2022, until the July 29, 2022, changeover Mr. Strawn met with varied BOI managers to help with employee questions and also logistics with Mr. Strawn's customers.

17.     On May 13, 2022 (three (3) days after the sale was announced) the executive management team from BOI visited Mr. Strawn's branch in Spokane and spoke to Mr. Strawn's team. Around that time the BOI managers also visited two of Mr. Strawn's best clients to discuss bank changeover logistics.

18.     The first meeting involved a call to Premier 1031 and its owner Rosemary Warnick. This call involved BOI employee Caleb Dimick (the SVP of Retail). Mr. Dimick began the call saying BOI was "an aggressive bank" and that they had "young and hungry" bankers working for them.

19. The second client meeting Mr. Strawn had with Mr. Dimick was with Goodale & Barbieri. At that meeting Mr. Dimick sat across the table from Alicia Barbieri the company's then-VP. Mr. Dimick said "the bank likes to hire and keep younger bankers, because older bankers just like to rest and slide through the day until they are ready to retire."

20. Mr. Strawn was appalled by the statement. He was 60 years old at the time. Mr. Strawn observed a look of disgust on Ms. Barbieri's face.

21. On Friday July 29, 2022 (the last day of HomeStreet's ownership) Chris Thomas the VP and HR Director for BOI came into Mr. Strawn's office about 3:30PM and talked to Mr. Strawn's team first, and then to Mr. Strawn individually.

22. Mr. Thomas told Mr. Strawn he didn't "fit the culture" of the BOI and they were not going to continue Mr. Strawn's employment.

23. Mr. Strawn surrendered his keys and told his staff goodbye. While telling his staff goodbye Mr. Strawn learned that his assistant manager Tricia Beane (a female substantially younger than he was either in 30's or early 40's) was asked to be the manager (but declined) so she became interim branch manager.

24. Mr. Strawn would later learn that BOI told some former customers of his and other bank staff that he didn't "fit their culture."

25. Mr. Strawn would later learn that BOI hired Jessica Marshall (a young woman in her 20's) who most recently had worked as an assistant manager trainee

AMENDED COMPLAINT0F – 7

at Washington Trust Bank for four (4) months to manage the branch. By way of comparison, at the time of his discriminatory termination/failure to hire on account of age, Mr. Strawn had 30+ years of branch management experience.

26. Mr. Strawn realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

## IV. CAUSES OF ACTION

### (Count 1 – Wage Rebate Act – HomeStreet)

27. RCW 49.52.050 provides:

Any employer or officer, vice principal or agent of any employer, whether said employer be in private business or an elected public official, who

…

(2) Wilfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract; or

Shall be guilty of a misdemeanor.

RCW 49.52.070 provides:

Any employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of RCW 49.52.050 (1) and (2) shall be liable in a civil action by the aggrieved employee or his or her assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees: PROVIDED, HOWEVER, That the benefits of this section shall not be available to any employee who has knowingly submitted to such violations.

AMENDED COMPLAINT0F – 8

28. As a result of these unlawful acts, Mr. Strawn has been deprived of compensation, specifically commissions, in amounts to be determined at trial. Mr. Strawn is entitled to the recovery of such damages, double damages due to the willful withholding of wages, including interest thereon, attorneys' fees under RCW 49.52.070, and costs.

**(Count 2 – Wage Payment Act - RCW 49.48.010 – Failure to Pay Wages – HomeStreet)**

29. Under Washington law, an employee who works on commission is entitled to be paid promised commissions on any sales for which that employee is the "procuring cause." The procuring cause rule states that "when a party is employed to procure a purchaser and does procure a purchaser to whom a sale is eventually made, he is entitled to a commission regardless of who makes the sale if he was the procuring cause of the sale." *Willis v. Champlain Cable Corp.,* 109 Wn.2d 747, 754 (1988).

30. The procuring cause rule continues to apply after an employee has been terminated, unless the employment contract states otherwise. "[I]n the absence of a contractual provision specifying otherwise, the procuring cause doctrine acts as a gap filler." *Miller v. Paul M. Wolff Co.,* 178 Wn. App. 957, 964 (2014). An employer "cannot terminate an agent's right to compensation if he or she caused the sale." *Syputa v. Druck Inc.,* 90 Wn. App. 638, 645 (1998).

AMENDED COMPLAINT0F – 9

31. HomeStreet entered into at least two agreements with Mr. Strawn (the 2021 and 2022 compensation agreements) in which HomeStreet agreed to pay Mr. Strawn varying and increasing commissions based on his ability to obtain new deposit accounts and grow existing deposit accounts. Mr. Strawn continually met the standards set out in the 2021 and 2022 compensation agreements, yet HomeStreet did not pay all of the commissions owed to Mr. Strawn. Mr. Strawn performed his duties under the contract. Specifically, Mr. Strawn met all of the plan's Participation and Eligibility requirements for the respective performance periods, maintained a satisfactory performance rating with the most recent audits, and grew the deposit accounts for new business to nearly $100,000,000.00. At least one new deposit account exceeded $4,000,000.00 in 2021.

32. RCW 49.48.010 provides that "[w]hen any employee shall cease to work for an employer, whether by discharge or by voluntary withdrawal, the wages due him on account of his employment shall be paid to him at the end of the established pay period."

33. By the actions alleged above, HomeStreet has violated the provisions of RCW 49.48.010 by failing to pay Mr. Strawn's earned commissions at the time his employment ended. As a result of HomeStreet's unlawful acts, Mr. Strawn has been deprived of compensation in an amount to be determined at trial and pursuant

to RCW 49.48.030, Mr. Strawn is entitled to such damages, including interest thereon, as well as attorneys' fees and costs.

34. Pursuant to RCW 49.48.010:

(2) When any employee shall cease to work for an employer, whether by discharge or by voluntary withdrawal, the wages due him or her on account of his or her employment shall be paid to him or her at the end of the established pay period: . . .

(3) It shall be unlawful for any employer to withhold or divert any portion of an employee's wages unless the deduction is:

(a) Required by state or federal law; or

(b) Except as prohibited under RCW 49.48.160, specifically agreed upon orally or in writing by the employee and employer; or

(c) For medical, surgical, or hospital care or service, pursuant to any rule or regulation: PROVIDED, HOWEVER, That the deduction is openly, clearly, and in due course recorded in the employer's books and records.

35. Mr. Strawn ceased working for HomeStreet and HomeStreet failed to pay wages due and owed at the end of the applicable pay period.

**(Count 3 –Breach of Contract - HomeStreet)**

36. Mr. Strawn and Defendant HomeStreet entered into numerous agreements in which HomeStreet agreed to pay Mr. Strawn commissions provided Mr. Strawn met certain customer/deposit targets.

37. Mr. Strawn performed his duties under the contract. Specifically, Mr. Strawn met all of the plan's Participation and Eligibility requirements for the respective performance periods, maintained a satisfactory performance ratings

AMENDED COMPLAINT0F – 11

with the most recent audits, and grew the deposit accounts for new business to nearly $100,000,000.00. At least one new deposit account exceeded $4,000,000.00 in 2021.

38. HomeStreet breached the employment contract by failing to pay the agreed commission and applicable wages. At the very least, HomeStreet failed to pay the full commission on the deposit that exceeded $4,000,000.00. Upon information and belief, Defendant HomeStreet only paid half of that commission. Upon further information and belief, Mr. Strawn also believes that, based on pattern and practice of when the commissions were paid out and the representations made to him regarding the scope and size of the commissions, that he is entitled to more in unpaid commissions than the one identified above. As result, Plaintiff was denied his commissions, which are considered wages under law, and suffered economic damages.

**(Count 4 – Breach of Good Faith and Fair Dealing - HomeStreet)**

39. Plaintiff and HomeStreet entered into an agreement and employment contract for the payment of wages and commissions. In 2021 and 2022 the Commission Plans set forth the amounts Mr. Strawn would earn based on the growth and creation of new deposit account.

40. Plaintiff performed his duties under the contract and satisfied all of the requirements under the commission agreements. In fact, he was so successful

AMENDED COMPLAINT0F – 12

in generating new business and new deposit accounts that HomeStreet instructed him to not bring on any new clients or deposits because they were worried about the amount of compensation he would receive.

41. Defendant was required to comply with the covenants of good faith and fair dealing to the Plaintiff. Defendant breached the duty of good faith and fair dealing owed to Mr. Strawn, denying him the full benefit of the contract under the agreement. By failing to allow Mr. Strawn to continue to generate new deposits for HomeStreet and commissions for himself, Defendant HomeStreet interfered with the contract and violated the duty of good faith and fair dealing.

42. As result, Mr. Strawn was denied wages and suffered economic damages.

**(Count 5 – Washington Law Against Discrimination (WLAD) RCW 49.60.180(1)&(2) – Age – BOI)**

43. In order to prove his age discrimination claim Mr. Strawn must prove that: (1) he was older than 40 years of age and performing his work satisfactorily (2) experienced an adverse employment action (3) was replaced by a person younger than 40 years of age (or substantially younger than him even if over 40 years of age), and (4) his age was a substantial (as opposed to the *only*) factor in the Defendants' decision to end his employment

44. Mr. Strawn was over 60 years of age.

45. Mr. Strawn's workplace performance was excellent.

46. Mr. Strawn experienced an adverse employment action as BOI did not continue his employment.

AMENDED COMPLAINT0F – 13

47. Mr. Strawn's age was a substantial factor in BOI's no-hire decision/no-continue to employ decision as (a) upon information and belief, Mr. Strawn was the only member of his branch that was not offered continued employment (b) he was replaced by a less qualified 20-year-old employee (c) the ageist remarks by BOI managers and (d) the pretextual "don't fit the culture" justification for his non-hire/no-continued employment.

48. BOI's acts have caused Mr. Strawn damages to be determined at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

A. An award of economic damages that resulted from HomeStreet's wrongful withholding of wages as well as BOI's failure to continue to employ/failure to hire Mr. Strawn;

B. Double damages as a result of HomeStreet's willful withholding of wages;

C. Economic and non-economic damages resulting from BOI's age discrimination;

D. Attorneys' fees and costs;

E. Grant such other and further relief as the Court deems necessary, just, and proper.

RESPECTFULLY SUBMITTED AND DATED this 29th day of June, 2023.

                                          RIVERSIDE LAW GROUP, PLLC

                                          By: *s/Casey Bruner*
                                                Matthew Z. Crotty, WSBA #39284
                                                Casey M. Bruner, WSBA #50168

Email: mzc@riverside-law.com
905 W Riverside Avenue, Suite 404
Spokane, Washington 99201
Telephone: (509) 850-7011
*Attorneys for Plaintiff*

AMENDED COMPLAINT0F – 15

# CERTIFICATE OF SERVICE

I certify that on June 29, 2023, I caused the forgoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Casey Bruner*
Casey M. Bruner, WSBA 50168
RIVERSIDE LAW GROUP, PLLC
905 W. Riverside Ave. Ste. 404
Spokane, WA  99201
Telephone: (509) 952 - 8182
Email: cmb@riverside-law.com

AMENDED COMPLAINT0F – 16